Filed 6/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CONNIE CALDWELL ADAMS,<br><br>    Plaintiff and Appellant,<br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>    Defendants and Respondents. | A156712<br><br><br>(Solano County<br>Super. Ct. No. FCS050082) |

Plaintiff Connie Caldwell Adams obtained a loan secured by a deed of trust on certain residential property located in Vallejo. Subsequently, Adams obtained a second loan from a different lender secured by a second deed of trust on the same property. When Adams defaulted on the junior loan, the junior lienholder foreclosed and sold the property. The sold property was still subject to the senior loan. Almost 10 years later, Adams filed a complaint alleging Bank of America (lender on the senior loan) and ReconTrust Company (trustee on the senior loan) (collectively defendants) violated the Homeowner Bill of Rights (HBOR). She alleged that after she applied for a modification of the senior loan, defendants recorded a notice of default and notice of trustee's sale on the senior loan and failed to provide her with a single point of contact, all while her application was pending. Defendants moved for judgment on the pleadings, arguing Adams could not state a cause of action under the HBOR. The trial court granted the motion without leave to amend. Adams appeals. We conclude that the complaint failed to allege

1

facts sufficient to state a cause of action under the HBOR but that the trial court abused its discretion when it denied Adams leave to amend. We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2006, Adams obtained a $422,750 loan secured by a deed of trust against residential property located on Wilson Avenue in Vallejo. The deed of trust names Adams as a " 'Borrower.' " The lender was America's Wholesale Lender, a fictitious name for Countrywide Home Loans, Inc. (Countrywide); Countrywide was acquired by Bank of America during the financial crisis. (See *Petersen v. Bank of America Corp.* (2014) 232 Cal.App.4th 238, 243, fn. 5.) ReconTrust Company, an affiliate of Countrywide, was the trustee under the deed of trust. (See *id.* at p. 243 & fn. 4.)

Later in August 2006, Adams obtained a $28,000 loan from an individual named Peter Gallegos, secured by a separate deed of trust recorded against the same property. Adams subsequently defaulted on the junior loan, resulting in foreclosure and a trustee's sale of the property in March 2008. Gallegos was the purchaser.[1] The sold property was still subject to the senior loan. Adams remained the " 'Borrower' " named on the deed of trust securing the senior loan.

In March 2017, Adams filed for chapter 7 bankruptcy. The order for discharge was filed in September 2017.

In December 2017, Adams filed a complaint against Bank of America and ReconTrust Company alleging a single cause of action for "Violations of the Homeowners' Bill of Rights." The complaint alleged that, in 2016 and 2017, Adams was "engaged in ongoing good faith negotiations with Bank of

---

[1] Gallegos is not a party to this appeal.

2

America toward the modification of a home loan [the senior loan] on his [*sic*] property at 372 Wilson Avenue, Vallejo, California, within this County." It alleged that "[a]t the same time, defendant bank was actively moving toward foreclosure of the home and took clear steps to satisfy this state's requirements toward a non-judicial foreclosure, including recording a notice of default and notice of trustee's sale. At present, and despite the ongoing good faith negotiations, the trustee's sale is schedule [*sic*] for January 3, 2018."

The complaint also alleged that, during this loan modification application process, "Bank of America did not provide [a] single point of contact, and instead plaintiff was shuttled from representative to representative, with the ultimate result being the home is facing foreclosure." In her prayer, Adams sought injunctive relief, declaratory relief, damages, "judgment quieting plaintiff's fee simple title to the real property and that defendants have no right, title, or interest in or to the real property," "equitable accounting to the alleged indebtedness," prejudgment interest, attorney's fees, and costs of suit.

Defendants moved for judgment on the pleadings, arguing the complaint failed to state facts sufficient to constitute a cause of action under the HBOR. Adams did not file an opposition. On December 19, 2018, the trial court granted the motion for judgment on the pleadings without leave to amend. On January 8, 2019, Adams attempted to file an amended complaint, but the filing was rejected by the court clerk. Judgment was entered on January 14, 2019. Plaintiff then filed a motion to reconsider, which was denied. This appeal followed.

3

## DISCUSSION

### I.  Standard of Review

A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action. (Code Civ. Proc., § 438, subd. (c)(3)(B)(ii).)  A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.  (*Kapsimallis v. Allstate Ins. Co.* (2002) 104 Cal.App.4th 667, 672.)  All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law.  (*Ibid.*)  Courts may consider judicially noticeable matters in the motion as well.  (*Ibid.*; *People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment.  (*Sanchez v. Truck Ins. Exchange* (1994) 21 Cal.App.4th 1778, 1781.)  " '[I]f it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' "  (*Ibid.*) "This abuse of discretion is reviewable on appeal 'even in the absence of a request for leave to amend' . . . ."  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970–971); see Code Civ. Proc., § 472c, subd. (a).)  Plaintiff has the burden to show there is a reasonable possibility the complaint's defects can be cured by amendment.  (*Sanchez*, at p. 1781.)

### II. HBOR Cause of Action

Adams contends she has a valid cause of action under the provisions of the HBOR that prohibit dual tracking and require a single point of contact. The issue before us is whether the facts alleged in Adams's complaint together with matters that are subject to judicial notice are sufficient to state a cause of action under that theory.

4

The HBOR was enacted "to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure." (Civ. Code, § 2923.4.)[2] Among other things, the HBOR prohibits dual tracking, whereby a financial institution continues to pursue foreclosure while evaluating a borrower's loan modification application. (§ 2923.6, subd. (c).) The HBOR also requires that a mortgage servicer establish a single point of contact and provide a borrower who requests a foreclosure prevention alternative with one or more direct means of communication with the single point of contact. (§ 2923.7, subd. (a).) A violation of either of these provisions can serve as the basis for a cause of action under the HBOR. The HBOR provides for injunctive relief for statutory violations that occur prior to foreclosure (§ 2924.12, subd. (a)) and monetary damages when the borrower seeks relief for violations after the foreclosure sale has occurred. (§ 2924.12, subd. (b); see *Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.)

The dual tracking and single point of contact provisions of the HBOR do not apply to all mortgages and deeds of trust. Pursuant to section 2924.15, they apply only to "first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units." On appeal, defendants argue that Adams's HBOR cause of action fails as a matter of law because she cannot meet the statutory definition of "owner-occupied." Specifically, defendants argue that Adams

---

[2] Unless otherwise indicated, all further section references will be to the Civil Code.

5

fails to meet this definition because she does not currently *own* the property. We turn to the statutory definition of "owner-occupied" first.

### A. *HBOR's Definition of "Owner-occupied"*

Section 2924.15 defines the term "owner-occupied" for the HBOR's dual tracking and single point of contact provisions. It states, "For these purposes, 'owner-occupied' means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes." (§ 2924.15.) " 'When a statute prescribes the meaning to be given to particular terms used by it, that meaning is generally binding on the courts.' " (*Great Lakes Properties, Inc. v. City of El Segundo* (1977) 19 Cal.3d 152, 156 (*Great Lakes*), quoting *People v. Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638.) The HBOR's internal definition of "owner-occupied" is controlling.

### B. *Defendants' Arguments Regarding "Owner-occupied"*

Despite this internal definition, defendants raise four arguments to support the conclusion that the term "owner-occupied" includes an ownership requirement. First, they argue that section 2924.15's definition of "owner-occupied" only applies to the word "occupied" and not to the full term. We reject this argument as the HBOR clearly prescribes a definition for the full "owner-occupied" term.

Second, defendants cite to legislative history of the HBOR, specifically the Senate Rules Committee's discussion of the " 'restriction to owner-occupied residences' " as " 'on the whole already contained in existing law, Civil Code Section 2923.5. . . .' " (Sen. Rules Com., Off. of Sen. Floor Analyses, conf. rep. No. 1 on Sen. Bill No. 900 (2011–2012 Reg. Sess.) as amended June 27, 2012, p. 26.) But section 2923.5 does not contain any requirement

6

that a borrower must also be an owner of the property. The same is true for the definition of "owner-occupied" in section 2924.15.

Third, defendants cite to the HBOR's provision of preforeclosure injunctive relief to suggest that it must apply to property owners or otherwise such relief would provide no benefit. This is unpersuasive because a borrower could clearly benefit from an injunction delaying foreclosure of a property if the property is his or her principal residence, regardless of ownership.

Fourth, defendants argue that the HBOR contains an implicit requirement of ownership because the term "borrower" is limited to those who are also owners. The HBOR explicitly defines the term "borrower" for the purposes of its dual tracking and single point of contact provisions. "Borrower" means "any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or through, his or her mortgage servicer." (§ 2920.5 subd. (c)(1).) Again, the HBOR's prescribed definition of the term "borrower" is controlling. (*Great Lakes*, *supra*, 19 Cal.3d at p. 156.) The August 2006 deed of trust, submitted with the motion for judgment on the pleadings, identifies Adams as a "borrower" on the senior loan. Defendants do not offer any authority that the trustee's sale of the property following default on the junior loan stripped Adams of her designation as borrower (or trustor) on the senior loan and associated deed of trust.

7

Accordingly, we follow the HBOR's definition of "owner-occupied" to mean what it says:  that the property must be the "principal residence of the borrower."[3]

## C. *Adams's Pleading of "Principal Residence of the Borrower"*

Given section 2924.15's definition of "owner-occupied," we must next decide whether facts alleged in the complaint or subject to judicial notice are sufficient to satisfy the "principal residence of the borrower" requirement. Nowhere in the complaint does Adams allege the property is her principal residence.  The complaint only references "his [*sic*] property at 372 Wilson Avenue, Vallejo, California," and "the home."

The documents defendants submitted in support of their motion for judgment on the pleadings similarly do not contain any judicially noticeable matter that establishes the property as Adams's principal residence.  For example, while a memorandum of points and authorities Adams submitted in the bankruptcy proceedings stated she "continues in possession of his [*sic*] estate and, in particular lives in her single family residence located at 372 Wilson Avenue, Vallejo, California," the truth of these assertions is not subject to judicial notice.  (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1569–1570.)  Even if they were judicially noticeable, the fact that Adams may reside at a property does not mean it is her principal residence.

Adams tries to overcome this omission by arguing that the same address is provided in documents she submitted to this court on appeal.[4]

---

[3] To the extent that defendants ask us to depart from the statutory definition and interpolate an ownership requirement, such a request is better directed to the Legislature, not this court.

[4] Adams filed a request for judicial notice with her opening brief and a supplemental request for judicial notice with her reply brief.  We deferred ruling on the requests until the merits of the appeal.  (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493–494.)  Having now considered the requests, we

8

While the existence of those documents may be judicially noticed, the matters asserted in those documents may not. (*Sosinsky v. Grant*, *supra*, 6 Cal.App.4th at pp. 1564, 1569–1570.) The documents do not contain any judicially noticeable matter that shows the property is Adams's principal residence. The mere fact that Adams has a loan on the property or lists the property as an address does not mean it is her "principal residence."

In sum, we conclude the facts alleged in the complaint together with matters that are subject to judicial notice do not establish that the Wilson Avenue property is Adams's principal residence. Therefore, Adams failed to state a cause of action under section 2924.15.[5]

---

deny them in full. The requests ask us to take judicial notice of seven documents, six of which were not presented to the trial court. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) In exceptional circumstances, an appellate court can, but is not required to, take judicial notice of material that was not presented to the trial court in the first instance. (*Ibid.*; see *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325.) Adams has not presented any exceptional circumstances. We follow the general rule and decline to exercise our discretion to take judicial notice of these documents. The seventh document, a notice of trustee's sale recorded on December 19, 2016, was presented to the trial court in defendants' request for judicial notice in support of their motion for judgment on the pleadings. Because this document is already in our record, we deny the request for judicial notice as unnecessary to our decision. (See, e.g., *TransparentGov Novato v. City of Novato* (2019) 34 Cal.App.5th 140, 146, fn. 3.)

[5] In light of this conclusion, we need not address defendants' arguments that the judgment should be affirmed on two derivative alternative grounds: (1) that Adams did not sufficiently allege that she had submitted a complete loan modification application for violation of section 2924.6; and (2) that Adams did not sufficiently allege that she had requested a single point of contact for violation of section 2924.7. We also note that we do not find either argument compelling. (See, e.g., *Valbuena v. Ocwen Loan Servicing, LLC*, *supra*, 237 Cal.App.4th at p. 1275 [finding plaintiffs sufficiently alleged a complete loan modification application where plaintiffs alleged they received

9

## D. *Other HBOR Claims*

Beyond the dual tracking and single point of contact provisions described above, Adams argues that her complaint also alleged violations of sections 2923.5, 2924.11, 2924.17, and 2924.18 of the HBOR. Three of these four sections trigger the same requirements of section 2924.15. (§ 2924.15 [including §§ 2923.5, 2924.11 & 2924.18].) Thus, even if the complaint included such allegations, the "principal residence" requirement would also be fatal to those claims.

The fourth, section 2924.17, requires that certain documents recorded in connection with a foreclosure "be accurate and complete and supported by competent and reliable evidence" and that a mortgage servicer review "competent and reliable evidence" to substantiate the default and right to foreclose before recording such documents. (§ 2924.17, subds. (a) & (b).) Facts sufficient to state a section 2924.17 claim are not alleged in Adams's complaint. (See *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## III.   Denial of Leave to Amend

Finally, we turn to the question of whether the trial court abused its discretion when it granted the motion for judgment on the pleadings without leave to amend. To make that determination, we consider whether on the pleaded and noticeable facts there is a reasonable possibility of an amendment that would cure the complaint's legal defect or defects. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

On appeal, Adams maintains that the Wilson Avenue property is her residence. She points to the allegation that she "continued to reside on the

---

requests for documentation, responded to those requests, and their application was "complete"]; *Green v. Cent. Mortg. Co.* (N.D.Cal. 2015) 148 F.Supp.3d 852, 875–876 [declining to interpret HBOR to require borrower to specifically request a single point of contact].)

property" asserted in the amended complaint she attempted to file after the trial court granted the motion for judgment on the pleadings, as well as her use of the Wilson Avenue address on various court filings. At oral argument before this court, Adams's counsel represented that Adams could plead and prove that the Wilson Avenue property was her principal residence at all relevant times. Defendants' counsel agreed that leave to amend would be appropriate if the court determined the HBOR's definition of "owner-occupied" to mean the "principal residence of the borrower." We conclude there is a reasonable possibility that amendment of the complaint to allege that the Wilson Avenue property was Adams's principal residence would cure this defect.

## DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to grant Adams leave to file an amended complaint.

_____
Jackson, J.

WE CONCUR:


_____
Siggins, P. J.


_____
Fujisaki, J.


A156712/*Adams v. Bank of America, N.A.*

A156712/Adams v. Bank of America, N.A.

Trial Court:         Superior Court of the County of Solano

Trial Judge:         D. Scott Daniels, J.

Counsel:         Law Office of Peter H. Liederman and Peter H. Liederman
for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton and Elizabeth C. Farrell
for Defendants and Respondents.